No. 21-35121

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**CENTER FOR BIOLOGICAL DIVERSITY**;
*Plaintiff-Appellant*,

v.

**DEB HAALAND,** in her official capacity as Secretary of the United States Department of the Interior; **MARTHA WILLIAMS**, in her official capacity as Director of the U.S. Fish and Wildlife Service;
*Defendants-Appellees*,

and

**STATE OF WYOMING** et al.;
*Intervenor Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
No. 9:19-cv-00109-DLC
THE HONORABLE JUDGE DANA L. CHRISTENSEN, PRESIDING

**PETITION FOR REHEARING EN BANC**

Eric Glitzenstein
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: (202) 849-8401
eglitzenstein@biologicaldiversity.org

Collette Adkins
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
Telephone: (651) 955-3821
cadkins@biologicaldiversity.org

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF BASIS FOR REHEARING EN BANC ...................................1

BACKGROUND ...................................................................................3

    A.   Recovery Planning Under The Endangered Species Act.............................3

    B.   The Center's Rulemaking Petition And FWS's Rejection .........................5

    C.   Prior Proceedings ..........................................................................6

REASONS FOR EN BANC REHEARING ..............................................9

    A.   The Panel Holding Conflicts With Ninth Circuit, Supreme Court, And D.C. Circuit Precedents...................................................................9

    B.   The Panel's Decision Raises Issues of Exceptional Importance. ..............16

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alaska v. Lubchenco*,
   723 F.3d 1043 (9th Cir. 2013) ...................................................14

*Am. Horse Prot. Ass'n v. Lyng*,
   812 F.2d 1 (D.C. Cir. 1987) ................................................ 3, 11

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................... 7, 9, 12

*Biodiversity Legal Found. v. Norton*,
   285 F. Supp. 2d 1 (D.D.C. 2003) ............................................14

*Clark v. Busey*,
   959 F.2d 808 (9th Cir. 1992) ............................................ 2, 10

*Coll. Sports Council v. Dep't of Educ.*,
   465 F.3d 20 (D.C. Cir. 2006) ..................................................3

*Cook Inletkeeper v. Raimondo*,
   533 F. Supp. 3d 739 (D. Alaska 2021) ..................................14

*Friends of Blackwater v. Salazar*,
   691 F.3d 428 (D.C. Cir. 2012) ...............................................13

*Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*,
   378 F.3d 1059 (9th Cir. 2004) ................................................3

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ......................................................... 2, 10

*Me. Cmty. Health Options v. United States*,
   140 S. Ct. 1308 (2020) .........................................................12

*Nader v. EPA*,
   859 F.2d 747 (9th Cir. 1988) ..................................................2

*Nat'l Customs Brokers & Forwarders Ass'n v. United States*,
   883 F.2d 93 (D.C. Cir. 1989) ................................................10

*O'Keefe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*,
   92 F.3d 940 (9th Cir. 1996) ....................................................2

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ........................................................................7

*Sw. Ctr. for Biological Diversity v. Bartel*,
  470 F. Supp. 2d 1118 (S.D. Cal. 2006) ..................................... 12, 14

*Weight Watchers Int'l, Inc. v. FTC*,
  47 F.3d 990 (9th Cir. 1995) ........................................... 2, 8, 10

*WildEarth Guardians v. Steele,*
  545 F. Supp. 3d 855 (D. Mont. 2021) ......................................14

*WWHT, Inc. v. FCC*,
  656 F.2d 807 (D.C. Cir. 1981) ..............................................11

## Statutes

5 U.S.C. § 551(4) ....................................................................1, 5

5 U.S.C. § 553(e) .............................................................. 1, 2, 5, 7

5 U.S.C. § 555(e) .....................................................................10

5 U.S.C. § 706 .........................................................................6

16 U.S.C. § 1371(a)(5)(E)(i)(II) ............................................15

16 U.S.C. § 1374(c)(4)(A)(ii) ................................................15

16 U.S.C. § 1387(f)(11) ........................................................15

16 U.S.C. § 1533(f)(1) .......................................... 1, 3, 4, 12, 13

16 U.S.C. § 1533(f)(1)(B)(i) ...................................................4

16 U.S.C. § 1533(f)(1)(B)(ii) ..................................................4

16 U.S.C. § 1533(f)(3) ...........................................................4

16 U.S.C. § 6512(a)(5)(A) ....................................................15

## Other Authorities

82 Fed. Reg. 30,502 (June 30, 2017) ......................................15

Fed. R. App. P. 35(b)(1)(A) .....................................................9

Fed. R. App. P. 35(b)(1)(B) ...................................................16

S. Doc. No. 79-248 (1946) ....................................................17

U.S. Const. amend. I .............................................................17

## STATEMENT OF BASIS FOR REHEARING EN BANC

The panel majority's holding that the denial of Plaintiff-Appellant's rulemaking petition is not a "final agency action" subject to *any* judicial review conflicts with prior rulings of this Court and the Supreme Court as well as the D.C. Circuit. Consideration by the full Court is thus necessary to maintain uniformity of decisions on an important issue of administrative law. In addition, as explained by Judge Sung in dissent, the majority's unprecedented ruling that some denials of rulemaking petitions are final agency actions subject to review whereas others are not "exacerbates confusion in this area of administrative law and creates an unwarranted barrier to judicial review." Opinion at 20 (hereafter "Op._").

The majority decision also raises questions of exceptional importance. By foreclosing any judicial review, the decision decimates the public's ability to petition for changes in agency legal interpretations and policies that qualify as "rules" under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551(4), 553(e). Among other consequences, the decision prevents the public from seeking changes in imperiled species' Recovery Plans—documents that Congress mandated that U.S. Fish and Wildlife Service ("FWS") "*shall* develop *and implement*," 16 U.S.C. § 1533(f)(1) (emphases added), and that have enormous legal and practical consequences for all species listed as endangered or threatened under the Endangered Species Act ("ESA").

In this case, Plaintiff Center for Biological Diversity ("Center") submitted a formal APA petition to FWS to update and otherwise strengthen the grizzly bear Recovery Plan that FWS first adopted decades ago following public notice and comment proceedings. FWS rejected the petition on the grounds that the Recovery Plan is not a rule and hence the Center had no right under the APA to petition—a position sustained by the district court but not by either the panel majority or Judge Sung. Instead, the majority "assume[d]" that the Recovery Plan *is* a "rule" within the meaning of the APA and that the Center had a legal right, under 5 U.S.C. § 553(e), to petition for its revision. Op.11. The majority nonetheless held that denial of the valid rulemaking petition is not a "final agency action" for which the Center can obtain judicial review.

As detailed in the dissent, the majority conflicts with this Court's longstanding precedents holding that denials of rulemaking petitions "are reviewed under the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A)." *Weight Watchers Int'l, Inc. v. FTC*, 47 F.3d 990, 992 (9th Cir. 1995); *see also O'Keefe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 943-44 (9th Cir. 1996); *Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992); *Nader v. EPA*, 859 F.2d 747 (9th Cir. 1988). The majority also conflicts with the Supreme Court's ruling in *Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007) (holding that denials of rulemaking petitions are "susceptible to judicial review") and many D.C. Circuit

2

decisions that have reviewed petition denials under the arbitrary and capricious standard. *See, e.g.*, *Coll. Sports Council v. Dep't of Educ.*, 465 F.3d 20, 23 (D.C. Cir. 2006); *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 3-6 (D.C. Cir. 1987).

In view of these conflicts, the "unwarranted barrier to judicial review" created by the majority, Op.20, and the evisceration of the recovery planning provision of the ESA, the Court should grant en banc review.

## BACKGROUND

### A. <u>Recovery Planning Under The Endangered Species Act</u>

The ESA "was enacted not merely to forestall the extinction of species . . . but to allow a species to recover to the point where it may be delisted." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1070 (9th Cir. 2004). Towards that end, ESA Section 4(f) provides that FWS (and the National Marine Fisheries Service ("NMFS") in the case of marine species) "*shall* develop and implement plans for the conservation and survival of endangered species and threatened species." 16 U.S.C. § 1533(f)(1) (emphasis added).

In developing and implementing recovery plans, FWS also "shall, to the maximum extent practicable . . . incorporate in each plan" those "site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination . . . that the species be removed

3

from the list." *Id*. § 1533(f)(1)(B)(i), (ii). Underscoring their importance, Congress provided that FWS "shall report every two years" to Congress "on the status of efforts to develop and implement recovery plans for all" listed species, *id*. § 1533(f)(3), and that FWS "shall, prior to final approval of a new or revised recovery plan, provide public notice and an opportunity for public review and comment on such plan." *Id*. § 1533(f)(1).

FWS adopted the grizzly bear's Recovery Plan in 1982 and revised it in 1993. Excerpts of Record (Dkt. 18) at 51 (hereafter "ER_"). The Recovery Plan focuses on four initial recovery areas, but also commits to evaluating "other potential recovery areas throughout the historical range of the grizzly bear." ER_59. In a 2011 status review, FWS reiterated that "other areas throughout the historic range of the grizzly bear in the lower 48 states should be evaluated to determine their habitat suitability" for recovery. ER_81. FWS also acknowledged that the Recovery Plan "no longer reflects the best available and most up-to-date information on the biology of the species and its habitat," ER_77-78, and that FWS should "[r]evise the recovery plan . . . so that it reflects the best scientific and commercial information available." ER_80.

Fewer than 1,900 grizzly bears now survive in the lower 48 states. ER_66-76. FWS has made no effort to recover the species outside of the initial areas

4

identified in the Recovery Plan. Nor has FWS updated the Plan with more recent scientific information, as FWS called for in 2011.

### B. The Center's Rulemaking Petition And FWS's Rejection

In an effort to prompt FWS to take the actions the agency itself had said were necessary for grizzly bear conservation, the Center submitted a formal rulemaking petition in 2014. The Center invoked its right to do so under the APA, 5 U.S.C. § 553(e), which provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." *Id*. The APA defines a "rule," in pertinent part, as the "whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ." *Id*. § 551(4).

The Center's detailed petition requested that FWS update the Recovery Plan with the most recent scientific information bearing on grizzly bear recovery and that FWS amend the Plan to address "significant remaining areas of suitable habitat" that could facilitate recovery. ER_35. FWS rejected the petition. Making no mention of its prior statements on the need to update the Plan and consider additional areas for recovery, FWS's two-page letter stated that "recovery plans are

not rules under the APA" and thus "Section 553(e) does not provide the right to petition for the issuance of a recovery plan." ER_33.[1]

## C. <u>Prior Proceedings</u>

In the district court, the Center argued that a formal Recovery Plan does qualify as a "rule" under the plain terms of the APA, and thus FWS's legal rationale for denying the Center's petition is arbitrary and capricious and "not in accordance with law" under 5 U.S.C. § 706. The government defended FWS's position that the Recovery Plan is not a rule and that the Center had no right to submit its petition. The government did not argue that, if the Center had such a right, FWS's denial would nonetheless be unreviewable.

The district court agreed with the government that the Recovery Plan does not constitute a rule. On that basis, the court held that it "lack[ed] subject matter jurisdiction to review the merits" of the Center's claim. ER_27. The court recognized that if the Center *had* submitted a "valid" rulemaking petition, FWS's "denial [would] constitute a final agency action which, in turn, vests this Court with subject matter jurisdiction over the merits." ER_21.

In this Court, the government likewise contended that the Recovery Plan is not a rule and that Plaintiff had no right under the APA to submit its petition.

---

[1] FWS also summarily asserted that "any additional recovery planning is subject to Service prioritization and is discretionary." ER_33. No court has ever reviewed whether that rationale is, by itself, a sufficient basis for rejecting the petition.

However, none of the members of the panel sustained that position. Instead, the majority "assume[s]" that the Recovery Plan *does* qualify as a rule under the APA and that the Center had a right to submit its petition under 5 U.S.C. § 553(e). *See* Op.11 ("Because the term 'rule' under the APA 'is defined broadly,' *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95-96 (2015), we assume, as our dissenting colleague argues, that a recovery plan fits under this broad umbrella."); *id*. ("[w]e also, assume, as our dissenting colleague argues, that an interested party can file a petition under § 553(e)").

But after assuming the Center had a right to petition, the majority effectively *nullifies* that right by holding that the Center cannot obtain any judicial review of FWS's denial—even a denial (as here) based on an agency's legal error. In reaching this result, the majority does not analyze whether the agency action actually before the Court—the denial of the rulemaking petition—is *itself* a final agency action. Rather, the majority addresses whether the *underlying document* the Center is seeking to modify (the Recovery Plan) qualifies as a final agency action under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *See* Op.12-19. The majority holds that the Recovery Plan does not satisfy *Bennett* because (according to the majority) the Plan is "not agency action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" Op.13 (quoting *Bennett*, 520 U.S. at 178).

7

The dissent first explains, consistent with the majority's assumption, that the Recovery Plan does satisfy the APA's definition of a "rule" and thus the Center had a legal right to petition under 5 U.S.C. § 553(e). Op.20-28. Judge Sung then explains that under precedent of this Circuit (and others), "'[a]n agency's denial of a petition for rulemaking constitutes final, reviewable agency action, except where there is evidence of a clear and convincing legislative intent to negate review'"— which no one (including the panel majority) has suggested is the case here. Op.29 (quoting *Weight Watchers*, 47 F.3d at 992). However, "[t]o reach the opposite conclusion, the majority focuses on the wrong action: Instead of asking whether the agency's denial of the Center's rulemaking petition satisfies the *Bennett* criteria, the majority asks whether 'the adoption of a recovery plan' satisfies the *Bennett* criteria." Op.32.

Indeed, as the dissent explains, the "majority cites no case in which a court has treated the question of whether the underlying rule is 'binding' as dispositive of, or even relevant to, the question of whether the denial of the rulemaking petition is final agency action. To the contrary, the cases that address denials of rulemaking petitions focus exclusively on the denial of the petition" as the final agency action under review. Op.32-33. Applying the *Bennett* framework to the petition denial (the agency action at issue, as *Bennett* itself requires), Judge Sung explains that both *Bennett* criteria are easily satisfied. *Id*. at 30-31 (demonstrating

8

that FWS's denial "is a final decision that is neither tentative nor interlocutory" and that the denial "is an action by which the Center's statutory right to petition under § 553 has 'been determined'") (quoting *Bennett*, 520 U.S. at 178).

The dissent also opines that the majority's novel approach, in addition to being wrong as a matter of law, has the "consequence of requiring courts to decide a difficult issue (whether the underlying rule is 'binding') before deciding a relatively straightforward issue (whether the agency's denial of the rulemaking petition was arbitrary and capricious)." Op.35. The majority therefore increases the burden on reviewing courts in this Circuit, "exacerbates confusion in this area of administrative law and creates an unwarranted barrier to judicial review." Op.20.

## REASONS FOR EN BANC REHEARING

### A. The Panel Holding Conflicts With Ninth Circuit, Supreme Court, And D.C. Circuit Precedents.

1. En banc review is necessary because the panel majority's decision conflicts with longstanding precedents. Fed. R. App. P. 35(b)(1)(A). Prior to the majority ruling here, this Court and other courts have held that denials of all rulemaking petitions properly submitted under 5 U.S.C. § 553(e) are final agency actions that are judicially reviewable under a deferential standard of review. As set forth in the dissent, neither this Court nor any other court has engaged in, let alone required, the "notoriously difficult" exercise of determining whether the

9

*underlying* action that is the subject of the petition should be characterized as a substantive rule, an interpretative rule, or a policy statement. Op.36.

Indeed, in every prior decision dealing with this issue, this Court has reaffirmed that "'[a]n agency's denial of a petition for rulemaking constitutes final, reviewable agency action . . . .'" *Weight Watchers*, 47 F.3d at 992 (quoting *Clark*, 959 F.2d at 811). The Court has recognized one (and only one) "except[ion]" to this rule: "where there is evidence of a clear and convincing legislative intent to negate review." *Id*. By foreclosing judicial review where, as here, no such evidence exists, the majority squarely conflicts with Circuit precedents.

The majority's approach also contravenes the Supreme Court's ruling in *Massachusetts v. EPA*. There, the Court held that because petitions for rulemaking are "subject to special formalities, including a public explanation," 549 U.S. at 527 (citing 5 U.S.C. § 555(e)), and the "affected party had an undoubted procedural right to file in the first instance," petition denials "are thus susceptible to judicial review, although such review is 'extremely limited' and 'highly deferential.'" *Id*. at 527-28 (quoting *Nat'l Customs Brokers & Forwarders Ass'n v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). There is nothing in the Supreme Court's holding (or its reasoning) that allows for the unprecedented exception created by the majority here. To the contrary, the Supreme Court's focus on the "affected party's" "procedural right to file [the petition] in the first instance"—a "right" the majority

10

"assume[s]" to be present, Op.11—parallels Judge Sung's analysis but cannot be reconciled with the majority's approach.

The majority's approach also conflicts with a long string of D.C. Circuit precedents, all of which have held denials of rulemaking petitions to be judicially reviewable for "plain errors of law," *Am. Horse*, 812 F.2d at 5 (citing other D.C. Circuit cases), or "where a significant factual predicate of a prior decision . . . has been removed." *WWHT, Inc. v. FCC*, 656 F.2d 807, 819 (D.C. Cir. 1981). Again, the rationale for these rulings stems from the right to petition conferred by the APA and has nothing to do with how the underlying agency action should be characterized. Rather, as the D.C. Circuit has explained, the fact that the APA both requires agencies to "allow interested persons to 'petition for the issuance, amendment, or repeal of a rule' and, when such petitions are denied, to give a 'brief statement of the grounds for denial' . . . suggest[s] that Congress expected the agencies denying rulemaking petitions must explain their actions" subject to a deferential standard of judicial review. *Am. Horse,* 812 F.2d at 3.[2]

2. In short, prior precedents from this Court, the Supreme Court, and the D.C. Circuit uniformly hold that denials of rulemaking petitions are judicially

---

[2] Indeed, as Judge Sung sets forth, the D.C. Circuit has reviewed denials of petitions that explicitly sought to amend or repeal a "policy interpretation" that the agency itself labeled as "guidance," as well as petitions for policy statements. Op.31 & n.12 (explaining that "the majority ignores that the rulemaking petitions at issue in those cases addressed non-binding rules").

11

reviewable irrespective of how the underlying document addressed by the petition (here, a Recovery Plan) is characterized. In conflict with those rulings, the majority's analysis hinges on its holding that Recovery Plans themselves have no "legal consequences." Op.18. That holding also conflicts with prior precedents, including *Bennett v. Spear*, as well as the plain language of the ESA.

In *Bennett*, the Supreme Court held that "biological opinions" issued by FWS pursuant to ESA Section 7, while "theoretically serv[ing] an *advisory* function," have sufficient "direct and appreciable legal consequences" (for both FWS and action agencies) to render those documents judicially reviewable. 520 U.S. at 169, 178-79 (emphasis added). The same is true of formal Recovery Plans adopted pursuant to ESA Section 4(f).

In unequivocally mandatory terms, Congress directed that FWS "*shall* develop *and implement*" such Plans. 16 U.S.C. § 1533(f)(1) (emphases added). The Supreme Court has repeatedly instructed that "the word 'shall' usually connotes a requirement." *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320-21 (2020) (citing cases; cleaned up); *see also Ctr. for Biological Diversity v. BLM*, 35 F. Supp. 3d 1137, 1150-51 (N.D. Cal. 2014) (explaining that the words in section 4(f), "shall develop and implement," are "'those of obligation rather than discretion'"); *Sw. Ctr. for Biological Diversity v. Bartel*, 470 F. Supp. 2d 1118, 1137 (S.D. Cal. 2006) ("The language and structure of the ESA's provisions for

12

recovery plans shows that FWS must make a conscientious and educated effort to implement the plans for the recovery of the species.") (citing 16 U.S.C. § 1533(f)(1)).

Consequently, any notion that FWS may disregard its own Recovery Plans in carrying out its other duties under the ESA flies in the face of the plain language of the statute. In holding that Recovery Plans have no legal consequences, the majority ignores the mandatory language of ESA Section 4(f) as well as Supreme Court precedent instructing how such statutory language should be construed.[3]

The majority also turns a blind eye to precedents establishing that formal Recovery Plans do have legal consequences. For example, this and other courts have repeatedly relied on Recovery Plans to assess whether FWS and NMFS have carried out their obligations under Section 7 of the ESA. *See, e.g.*, *Alaska v.*

---

[3] The majority relies on Circuit precedents holding that *action agencies* have no obligation to carry out the terms of Recovery Plans. Op.13. But aside from the opinion here, there is no binding case law in this Circuit holding that, insofar as *FWS itself* is concerned, no legal consequences flow from FWS's adoption of a formal Recovery Plan. Certainly, no Circuit precedent has endeavored to reconcile such an untenable conclusion with the Congressional mandate imposed on FWS (and NMFS) by the plain terms of ESA Section 4(f). *See also* Center's Opening Brief (Dkt. 17) at 33-35 (discussing Circuit precedent). The D.C. Circuit, while holding that the "objective, measurable" criteria in a Recovery Plan do not necessarily bind FWS when it is deciding whether to delist a species, has stated that ESA Section 4(f) *does* impose legal obligations on FWS *while a species remains listed*. *See Friends of Blackwater v. Salazar*, 691 F.3d 428, 437 (D.C. Cir. 2012) ("The [FWS], moreover, *must implement the plan*. That is, as long as a species is listed as endangered, *the agency is obligated to work toward the goal set in its recovery plan*.") (citing 16 U.S.C. § 1533(f)(1)) (emphases added).

13

*Lubchenco*, 723 F.3d 1043, 1053-54 (9th Cir. 2013) (applying the recovery criteria in the Stellar sea lion Recovery Plan in assessing whether NMFS's biological opinion was arbitrary or capricious); *Cook Inletkeeper v. Raimondo*, 533 F. Supp. 3d 739, 763-64 (D. Alaska 2021) (holding biological opinion arbitrary and capricious where it conflicted with NMFS's Recovery Plan for the Cook Inlet beluga whale); *WildEarth Guardians v. Steele,* 545 F. Supp. 3d 855, 881 (D. Mont. 2021) (finding a biological opinion arbitrary and capricious where FWS "made no reference to its own [bull trout] Recovery Plan" which "identified culvert removal as an aspect of successful bull trout recovery").

Recovery Plans also have had legal consequences for FWS's implementation of other ESA provisions, including FWS's issuance of "incidental take permits" under ESA Section 10, *see, e.g.*, *Sw. Ctr.*, 470 F. Supp. 2d at 1137 (ordering that "FWS must consider the standards and other information in its *Vernal Pool Recovery Plan* to evaluate the effect of the City's [incidental take permit] on the vernal pool species and whether the mitigation is adequate"), and determination of "critical habitat" under ESA Section 4*, see, e.g.*, *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 13-14 (D.D.C. 2003) (holding that Recovery Plan for the Cape Sable seaside sparrow imposed on FWS a "duty to revise" the sparrow's critical habitat designation).

Congress has also attached legal consequences to Recovery Plans in statutes other than the ESA. The Marine Mammal Protection Act ("MMPA") allows for the incidental take of listed marine mammals during commercial fishing operations only if "a recovery plan has been developed or is being developed for such species . . . pursuant to the [ESA]." 16 U.S.C. § 1371(a)(5)(E)(i)(II). The MMPA also requires that "take reduction plans" during fishing operations "shall be consistent with any recovery plan" issued under the ESA, *id*. § 1387(f)(11), and that any permits for take or importation of marine mammals for conservation purposes must be consistent with "any recovery plan developed under section 1533(f)." *Id*. § 1374(c)(4)(A)(ii). Likewise, the Healthy Forests Restoration Act requires that "hazardous fuel reduction projects" on federal lands that contain endangered or threatened species must be consistent with a "species recovery plan prepared under section 1533 of this title." 16 U.S.C. § 6512(a)(5)(A); *see also* 82 Fed. Reg. 30,502, 30,516 (June 30, 2017) (explaining that the U.S. Forest Service has incorporated the grizzly bear Recovery Plan's restrictions on motorized access and other habitat protections into its forest plans "so that they are legally applied to these public lands within the [Greater Yellowstone Ecosystem]").

These illustrations (none of which is addressed by the majority) demonstrate that, even if the majority is correct in focusing on Recovery Plans themselves rather than FWS's petition denial, Recovery Plans in fact have myriad legal

consequences. The majority's contrary holding conflicts with *Bennett v. Spear* as well as Congress's mandate that FWS "shall develop and implement" Recovery Plans.

## B. The Panel's Decision Raises Issues of Exceptional Importance.

En banc review is also warranted because the panel's holding raises issues of exceptional importance. Fed. R. App. P. 35(b)(1)(B).

First, as explained by Judge Sung, the holding injects unnecessary "confusion" and uncertainty into an important area of administrative law in which it has been well-settled that denials of rulemaking petitions are judicially reviewable under a deferential standard. Op.20. But now, for the first time, courts in this Circuit must engage in what can be a "notoriously difficult" assessment as to whether the underlying rule is "binding" before considering whether the agency's denial is arbitrary and capricious. Op.36.

Second, by "creat[ing] an unwarranted barrier to judicial review," Op.20, the majority has eviscerated the statutory right to petition for rulemaking. Again, while the majority assumes that the Center has such a right here, Op.11, a right to petition without a concomitant right to *some* judicial review of an agency's denial is meaningless. Here, for example, the majority itself assumes that the reason given by FWS for its denial of the Center's petition—that the Center had no right under 5 U.S.C. § 553(e) to submit its petition—is legally *wrong*. Op.11. Yet under the

16

majority's ruling, FWS's legal error cannot be remedied. Indeed, without any judicial review, any agency may now deny valid rulemaking petitions for *any* reason, no matter how legally or factually bankrupt, or for no coherent reason at all.

This paradoxical result is not what Congress had in mind when it established the right to petition in the APA—a right that Congress said was "of the greatest importance" because it effectuates the "right to petition . . . written into the Constitution itself." S. Doc. No. 79-248, at 359 (1946); *see also* U.S. Const. amend. I (guaranteeing the "right of the people . . . to petition the Government for a redress of grievances"); *Amicus* Brief of Law Professors (Dkt. 22) at 13-14 (summarizing legal scholarship emphasizing the importance of the APA's right to petition).

Third, the majority's holding frustrates effective implementation of the ESA by eliminating the interested public's ability to have any meaningful input into ongoing recovery planning for imperiled species. More broadly, the holding that Recovery Plans have no legal consequences, notwithstanding the legislative directive that FWS "shall develop and implement" such Plans, stymies the Congressional design for recovering imperiled species.

**CONCLUSION**

The Court should rehear this case en banc because the panel ruling conflicts with prior precedents and because it raises issues of exceptional importance for the public's right to petition under the APA and for the implementation of the ESA.

/s/ Eric Glitzenstein
Eric Glitzenstein

*Attorney for Plaintiff-Appellant*