No. 21-35121

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CENTER FOR BIOLOGICAL DIVERSITY,
*Plaintiff-Appellant*,

vs.

DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior; MARTHA WILLIAMS, in her official capacity as Director of
U.S. Fish and Wildlife Service;
*Defendants-Appellees*,

and

STATE OF WYOMING et al.;
*Intervenor Defendants-Appellees*.

---

## JOINT BRIEF OF INTERVENOR DEFENDANTS-APPELLEES STATE OF IDAHO AND WYOMING IN RESPONSE TO PETITION FOR REHEARING EN BANC

---

RAÚL R. LABRADOR, ATTORNEY GENERAL
SCOTT L. CAMPBELL, Chief of Energy and Natural Resources Division
OWEN MORONEY, Deputy Attorney General
600 S. Walnut Street, P.O. Box 25, Boise, ID 83707
(208) 334-3715, owen.moroney@idfg.idaho.gov
*Counsel for Intervenor Defendant-Appellee State of Idaho*

BRIDGET HILL, ATTORNEY GENERAL
TRAVIS S. JORDAN, Senior Assistant Attorney General
109 State Capitol, Cheyenne, WY 82002
(307) 777-7895, travis.jordan@wyo.gov
*Counsel for Intervenor Defendant-Appellee State of Wyoming*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ..................................................................... 1

BACKGROUND ...................................................................... 1

    A. Recovery Plans ........................................................... 1

    B. The Center's Letter .................................................... 3

    C. Procedural History .................................................... 5

ARGUMENT ......................................................................... 5

    A. The panel holding is consistent with existing court
       precedent making en banc review unnecessary .................... 5

    B. This proceeding does not raise an issue of
       exceptional importance ......................................... 13

CONCLUSION ..................................................................... 15

i

# TABLE OF AUTHORITIES

## CASES

*Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987) ...... 12

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................. 6

*Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105
    (9th Cir. 2015) ................................................................... 9

*Conservation Cong. v. Finley*, 774 F.3d 611 (9th Cir. 2014)............... 9

*Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412 (9th
    Cir. 2023) .........................................................................5, 11, 12

*Ctr. for Biological Diversity v. Zinke*, 399 F. Supp. 3d 940
    (D. Ariz. 2019) ................................................................. 3

*Friends of Blackwater v. Salazar*, 691 F.3d 428 (D.C.
    Cir. 2012) .......................................................................... 8, 9

*Friends of the Wild Swan, Inc. v. Dir. of United States Fish &*
    *Wildlife Serv.*, 745 F. App'x 718 (9th Cir. 2018).............9. 11, 13

*Friends of the Wild Swan, Inc. v. Thorson*, No. 3:16-CV-681-AC,
    2017 WL 7310641 (D. Or. Jan. 5, 2017).................................... 11

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535 (11th Cir. 1996) ............. 9

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th
    Cir. 2006) .......................................................................... 7

*Strahan v. Linnon*, 967 F. Supp. 581 (D. Mass. 1997), *aff'd*, 187
    F.3d 623 (1st Cir. 1998)......................................................... 10

*Strickland v. Morton*, 519 F.2d 467 (9th Cir. 1975) ........................... 9

*Weight Watchers Int'l, Inc. v. F.T.C.*, 47 F.3d 990 (9th Cir. 1995) .... 13

**STATUTES**

5 U.S.C. § 553 ................................................................. 12

5 U.S.C. § 704 .............................................................. 6, 12

16 U.S.C. § 1531 ............................................................. 8

16 U.S.C. § 1532 ............................................................. 8

16 U.S.C. § 1533 ...................................................passim

**FEDERAL REGULATIONS**

40 Fed. Reg. 31,734 (July 28, 1975) ..................................... 3

**COURT RULES**

Fed. R. App. P. 35 ........................................................ 5, 13

**OTHER AUTHORITIES**

Lawrence R. Liebesman, L. of Envtl. Prot., *The enforceability of recovery plans*, 3 L. of Envtl. Prot. § 21:22 ............................................... 9

# INTRODUCTION

Courts have universally held that Endangered Species Act (ESA) recovery planning is a pinnacle of agency discretion, and that recovery plans are non-binding guidance documents. Sidestepping a mountain of applicable law, the Center seeks en banc review to open a loophole under the Administrative Procedure Act (APA) to provide judicial review of its policy disagreement with a non-binding planning document. That is the Center desires judicial review of its policy position that the grizzly recovery plan should encompass far-flung locations well outside of current grizzly bear range, by arguing the plan is reviewable "final agency action." The panel decision correctly rejected permitting non-binding recovery plans to become subject to judicial review. This decision does not involve a question of exceptional importance and *en banc* consideration is not necessary for uniformity of the Court's decisions. The Court should deny the Center's petition for en banc review.

# BACKGROUND

## A. Recovery Plans

Section 4(f) of the ESA provides for the adoption and implementation of "recovery plans" for listed species unless a finding is

made that such a plan will not benefit the species. 16 U.S.C. § 1533(f)(1). The language of Section 4(f) gives the Service a great deal of discretion. Section 4(f) provides the Service with discretion to prioritize "to the maximum extent practicable" which species receive recovery plans based upon which species are "most likely to benefit from such plans . . . ." 16 U.S.C. § 1533(f)(1)(A). Nothing in Section 4(f) provides that recovery plans serve as mandates for the myriad of agencies, governments, private entities, or individuals that a recovery plan may discuss. Instead, Section 4(f) simply states that the Service "may procure the services of appropriate public and private agencies and institutions, and other qualified persons" to effectuate its plans. 16 U.S.C. § 1533(f)(2). A recovery plan prepared pursuant to section 4(f) is structurally and functionally non-binding for both the Service and these other entities, as recognized by the Court. *See* Infra at 8-11.

While recovery plans are discretionary and non-binding, the ESA does require a few elements when the Service drafts a recovery plan. 16 U.S.C. § 1533(f)(1). The Service is required to incorporate into each plan:

> (i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

2

(ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and

(iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

16 U.S.C. § 1533(f)(1)(B). Although courts have held a court may entertain a suit under the ESA's citizen suit provision if one of these elements is missing from a recovery plan, the Center has not brought such a challenge in this case. *See e.g. Ctr. for Biological Diversity v. Zinke*, 399 F. Supp. 3d 940, 948 (D. Ariz. 2019).

The Service approved the initial Grizzly Bear Recovery Plan in 1982, after listing grizzly bears in 1975. ER-51; 40 Fed. Reg. 31,734 (July 28, 1975). The Service revised the plan in 1993. *Id.* The Plan has been supplemented numerous times: in 1996 (Bitterroot Chapter); 1997 (North Cascades Chapter); 2007 and 2017 (Greater Yellowstone); and 2018 (Northern Continental Divide). ER-50, 49, 47, 46, 40 and 38.

**B. The Center's Letter**

On June 18, 2014, the Center submitted a letter labeled as a "petition" requesting that the Service update and supplement the grizzly

3

bear recovery plan. ER-35. The Center largely requested an expansion of the geographic breadth of the plan for the "species across its native range in the United States" including isolated locations distant from current populations, such as the Grand Canyon. *Id.* The bear's historic range extends from Alaska and Canada, across the western U.S. into northern Mexico. IDSER-3. The Center essentially asked the Service for policy changes to the plan but did not allege any required element was missing, such as the items required by 16 U.S.C. § 1533(f)(1)(B).

On September 22, 2014, the Service denied the Center's letter for multiple reasons. ER-33, 34. First, the Service explained that recovery plans are not "rules" under the APA, and the APA does not provide a right to petition for the issuance of a recovery plan. ER-33. The Service explained that recovery plans are "discretionary guidance documents that are non-binding and non-enforceable." *Id.* The Service described how it prioritized recovery planning for grizzly populations that were present at the time of listing and where appropriate habitat conditions persisted. ER-34. The Service explained that it had prepared, revised, and supplemented the plan numerous times and that future recovery planning efforts were a matter within the agency's discretion, subject to

4

allocation of limited resources. *Id.* As the Service put it, expanding planning efforts outside of existing recovery areas "would require redirecting limited grizzly bear recovery dollars away from . . . ongoing recovery efforts with subsequent erosion of recovery success." *Id.*

## C. Procedural History

The Center filed its complaint on June 27, 2019. ER-9. The district court issued a decision on December 23, 2020, granting the Defendants' motions for summary judgment. ER-6-32. The Center appealed and this Court affirmed, on different grounds, the district court's grant of summary judgment in favor of the Defendants in the case. *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 420 (9th Cir. 2023). The Court held that the decision not to amend the recovery plan was not "final agency action" under the APA subject to judicial review. *Id.* The Center now petitions for rehearing en banc. Dkt 69-1.

## ARGUMENT

### A. The panel holding is consistent with existing court precedent making en banc review unnecessary.

En banc review is not necessary because the panel's decision is consistent with existing precedent. *See* Fed. R. App. P. 35(b)(1)(A) (only

providing for en banc review when there is a conflict with precedent). The decision not to modify a recovery plan, like the plans themselves, is not final agency action under well settled law and the language of the APA. As recognized by the Court, the APA only grants jurisdiction to review "[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704 (emphasis added). As the Center has not alleged this action is "made reviewable by statute," there must be "final agency action" to vest the Court with jurisdiction.

The Supreme Court has held that there are two conditions that must be satisfied for an agency action to be "final." *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the "consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177-78 (cleaned up). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (cleaned up). "In determining whether an agency's action is final, we look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations

6

of the subject party, or if immediate compliance with the terms is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). This requires "focus on the practical and legal effects of the agency action," with finality being "interpreted in a pragmatic and flexible manner." *Id.* (cleaned up).

The ESA concerns species listing and delisting. The decision to amend a recovery plan does not meet the first *Bennett* condition because recovery plans do not mark the consummation of any decision making and are merely tentative and interlocutory documents designed to achieve delisting. Recovery plans are freely updated and supplemented at the Service's discretion, as has been the case with the grizzly recovery plan. *Supra* at 3. Ultimately whether a particular species should be listed as either "endangered" or "threatened," or delisted, is determined by the process set forth in section 4 of the ESA. Under this section, the Service is required to determine whether a species is endangered or threatened "because of any" of the following five statutory factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;
(B) overutilization for commercial, recreation, scientific, or education purposes;
(C) disease or predation;

7

(D) the inadequacy of existing regulatory mechanisms; or
(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1)(A)-(E). The ultimate goal of the ESA is to recover listed species to the point where they no longer need ESA protection. 16 U.S.C. §§ 1531(b)-(c), § 1532(3). The D.C. Circuit in *Friends of Blackwater v. Salazar*, analogized a recovery plan to a map: "Although a map may help a traveler chart his course, it is the sign at the end of the road, here the five statutory factors indicating recovery, and not a mark on the map that tells him his journey is over." 691 F.3d 428, 434 (D.C. Cir. 2012).

The plethora of court cases holding that recovery plans are non-binding and discretionary further buttresses the conclusion that the plans do not mark the consummation of any decision making and are merely of a tentative or interlocutory nature. Courts have universally held that section 4(f) and the ESA as a whole give agencies significant latitude in determining when, how, and even if recovery plans are created, implemented, and amended. In other cases, the Ninth Circuit has recognized that "recovery plans are not mandatory;" the ESA "does not mandate compliance with recovery plans for endangered species;"

8

and "recovery plans are for guidance purposes only." *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1114 n.8 (9th Cir. 2015).

Although recovery plans provide guidance for the conservation of species, they are not binding authorities. *Conservation Cong. v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014). Recovery plans do "not create any legal rights or obligations for the Service or any third parties." *Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 F. App'x 718, 721 (9th Cir. 2018) (unpublished opinion) (citations omitted). "By providing general guidance as to what is required in a recovery plan, the ESA 'breathe[s] discretion at every pore.'" *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547 (11th Cir. 1996) (quoting *Strickland v. Morton*, 519 F.2d 467, 469 (9th Cir. 1975)). "[C]ourts have uniformly refused to make such plans enforceable." Lawrence R. Liebesman, L. of Envtl. Prot., *The enforceability of recovery plans*, 3 L. of Envtl. Prot. § 21:22. "A plan is a statement of intention, not a contract. If the plan is overtaken by events, then there is no need to change the plan; it may simply be irrelevant." *Friends of Blackwater*, 691 F.3d at 434.

The ESA establishes no timetable for recovery plan development, is silent on updating recovery plans, and does not contain a requirement

to update scientific references in plans. *See* 16 U.S.C. § 1533(f). With regard to timetables for recovery plan development, the text of § 4(f) does not impose any specific timeline for plan development and implementation. *Id.* Instead, the language of § 4(f)(1) clearly gives the Service discretion to prioritize "to the maximum extent practicable" which species are most likely to benefit from such plans in timing plan development. Whereas other provisions in the ESA require updates, such as five-year status reviews, 16 U.S.C. § 1533(g), the provision for recovery plans does not mandate updates, *id.* § 1533(f). *See also Strahan v. Linnon*, 967 F. Supp. 581, 597 n.18 (D. Mass. 1997), *aff'd*, 187 F.3d 623 (1st Cir. 1998) (rejecting an argument that there were time requirements for revising and updating recovery plans even when the plan set out a timeline for updates).

Recovery of a species is a dynamic process, requiring adaptive management that may or may not fully follow recovery plan guidance. While the ESA prioritizes the use of the best available science and data for designations of critical habitat and decisions that determine the ESA protections that apply to a species (*i.e.*, designation as endangered/ threatened, or delisting), the ESA does not apply this requirement to

10

recovery plans. *Compare* 16 U.S.C. § 1533(b) *with* § 1533(f); *see also Friends of the Wild Swan, Inc. v. Thorson*, No. 3:16-CV-681-AC, 2017 WL 7310641, at *10 (D. Or. Jan. 5, 2017).

Further, recovery plans also clearly do not meet the second *Bennett* condition for "finality." As the panel decision recognized, it is not possible to say that recovery plans are actions by which rights or obligations have been determined, or from which legal consequences will flow. *Ctr. for Biological Diversity*, 58 F.4th at 417. As existing court precedent universally holds recovery plans are not mandatory or binding, it cannot be said that they contain obligations or legal consequences. *See Supra* at 9. Courts have already recognized that the plans may freely be amended, updated, and revised. *See Supra* at 9-10. Indeed, the determination that recovery plans do not meet the second *Bennett* condition is nothing new with the Ninth Circuit already reaching this holding years ago. *Friends of the Wild Swan, Inc.*, 745 F. App'x at 721 (unpublished) ("[R]ecovery plans are not agency actions by which rights or obligations have been determined, or from which legal consequences will flow.").

While the Center argues merely labeling a letter as a "petition" endows the letter with a status allowing judicial review, the panel decision correctly concludes "that is not what the APA says." *Ctr. for Biological Diversity*, 58 F.4th at 418. Judicial review is addressed in 5 U.S.C. § 704, requiring "final agency action," which requires something more than a policy dispute with a non-binding planning document. While 5 U.S.C. § 553(e) states there is a right to "petition for the issuance, amendment, or repeal of a rule," that provision is silent on judicial review, which is separately addressed in section 704. The Center's argument is that any policy dispute is justiciable if a party merely labels it as a petition—a result that would create an endless loophole miring the courts in review of policy disputes wholly lacking legal consequence. Such an interpretation renders meaningless the APA's language restricting review to "final agency action."

The Center fails to cite a case involving judicial review of something akin to a recovery plan, which is clearly not "final agency action." *See* Dkt 69-1 at 11. In arguing that any petition denial is reviewable, the Center only points to cases involving agency action that is final. *See e.g., Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1 (D.C.

12

Cir. 1987) (challenging regulations under the Horse Protection Act);
*Weight Watchers Int'l, Inc. v. F.T.C.*, 47 F.3d 990, 991 (9th Cir. 1995)
(challenging weight loss regulations).

In sum, en banc review is not necessary because the panel's
decision is consistent with existing precedent and the language of the
APA.

## B. This proceeding does not raise an issue of exceptional importance.

En banc review is inappropriate because the Center has failed to
show that this proceeding raises an issue of exceptional importance. *See*
Fed. R. App. P. 35(b)(1)(B) (only providing for en banc review when "the
proceeding involves one or more questions of exceptional importance").
As described above, there is a mountain of precedent establishing that
recovery plans are guidance documents that do not bind a person or
entity. *Supra* at 8-9. An existing Ninth Circuit case recognizes the
obvious, that such non-binding recovery plans are not "final agency
action" under *Bennett. Friends of the Wild Swan, Inc.*, 745 F. App'x at
721 (unpublished).

13

While the Center argues that the panel decision confuses administrative law, creates an unwarranted barrier to judicial review, and thwarts its ability to have input on recovery plans, the Center's arguments are without merit. *See* Dkt 69-1 at 16-17. First, the panel decision does not confuse administrative law: it is already well settled that recovery plans are non-binging, guidance documents that are not final agency action. *Supra* at 9. It would turn the APA's "finality" requirement on its head to endow the Center with the authority to bring a judicial challenge to interlocutory, non-binding plans based merely on labeling requests for changes to these documents as "petitions." Second, the panel's decision does not create an unwarranted barrier to judicial review. The APA explicitly only vests courts with the ability to review "final agency action" and not a mere policy disagreement. Third, the panel holding contains nothing new with respect to an advocacy group's ability to have input into recovery plans. As already recognized by numerous courts, the ESA establishes no timetable for recovery plan development, is silent on updating recovery plans, and does not contain a requirement to update scientific references in plans. *Supra* at 9-10.

14

It is well established that the language Congress chose in the ESA simply does not provide advocacy groups with sweeping judicial review of any disagreements they might have with the recovery planning process. *Supra* at 8-11. Instead, Congress recognized that species recovery is a dynamic process, requiring adaptive management that may or may not fully follow recovery plan guidance. *Supra* at 10-11.

In conclusion, this proceeding does not raise an issue of exceptional importance necessitating en banc review.

## CONCLUSION

For the foregoing reasons, the Court should deny the Center's petition to rehear this case en banc.

Date: April 13, 2023.

Respectfully submitted,

*/s/ Owen Moroney*
OWEN MORONEY

*Counsel for State of Idaho*

/s/ Travis S. Jordan
TRAVIS S. JORDAN

*Counsel for State of Wyoming*

15

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 21-35121

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⊙ Prepared in a format, typeface, and type style that complies with Fed. R. App.

P. 32(a)(4)-(6) and **contains the following number of words:** | |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

⦿ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Owen Moroney    **Date** | April 13, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                              *Rev. 12/01/2021*

16